UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Jodi B.[1],

                            Plaintiff,

v.                                                                                             CASE # 19-cv-00834

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER<br>  Counsel for Plaintiff<br>6000 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | ANTHONY ROONEY, ESQ.<br>KENNETH HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | AMY HAWKINS MORELLI, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative

---

[1] In accordance with Standing Order in November 2020, to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff by first name and last initial.

record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

### I.     RELEVANT BACKGROUND

#### A.     Factual Background

Plaintiff was born on January 17, 1973, and has a high school education. (Tr. 205, 56). Generally, plaintiff's alleged disability consists of back problems, depression, anxiety, and thyroid problems. (Tr. 89). Her alleged onset date of disability is February 2, 2013. (Tr. 205). Her date last insured was June 30, 2018. (Tr. 243).

#### B.     Procedural History

On March 9, 2016, plaintiff applied for a period of Disability Insurance Benefits (SSD) under Title II of the Social Security Act and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. (Tr. 205-219). Plaintiff's applications were denied, after which she timely requested a hearing before an Administrative Law Judge (ALJ). On June 20, 2018, plaintiff appeared before the ALJ, Aaron Morgan. (Tr. 51-75). On July 5, 2018, ALJ Morgan issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 30-50). On April 25, 2019, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 1-7). Thereafter, plaintiff timely sought judicial review in this Court.

#### C.     The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2018.

2. The claimant has not engaged in substantial gainful activity since February 2, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spines with radiculopathy, asthma, depression, and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she could climb ramps, stairs, ladders, ropes, or scaffolds occasionally; balance, stoop, kneel, crouch, and crawl occasionally; occasionally be exposed to dust, odors, fumes, and pulmonary irritants; and occasionally be exposed to extreme heat or cold. She could perform simple, routine tasks with simple work-related decisions; she could respond to co-workers appropriately frequently; and she could respond to the public appropriately occasionally.

6. The claimant is unable to perform past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 17, 1973 and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material because using the Medical-Vocational Rules as a framework supports that the claimant is "not disabled," whether or not he has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 2, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 30-45).

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes three arguments in support of her motion for judgment on the pleadings. First, plaintiff argues the ALJ improperly evaluated opinion evidence from Warren Rogers, M.D., and Elizabeth Printup, nurse practitioner. (Dkt. No. 11 at 14 [Pl.'s Mem. of Law). Second, the ALJ erred by not including a limitation on interacting with supervisors in the RFC. (*Id.* at 19). Third, the Appeals Council erred in not considering post-decision evidence. (*Id.* at 23).

### B.     Defendant's Arguments

Defendant responded to each of plaintiff's arguments. First, defendant asserts the ALJ properly evaluated the opinion evidence. (Dkt. No. 13 at 7 [Def.'s Mem. of Law]). Second, plaintiff failed to show she had additional mental work-related limitations beyond those assessed in the mental RFC finding. (*Id*. at 10). Lastly, plaintiff's late-submitted evidence to the Appeals Council was not related to the relevant period the ALJ adjudicated. (*Id.* at 13).

## III.    RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant

will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme

Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

### A.  Medical Opinion Evidence

The regulations require the ALJ to assess a claimant's RFC "based on all the relevant evidence in [the claimant's] case record," and further explains that such evidence includes objective medical evidence (*i.e.,* medical signs or laboratory findings), medical opinions, medical history, clinical findings, prescribed treatment, and the claimant's own descriptions of his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* 20 C.F.R. §§ 404.1513(a)(1)-(5), 416.913(a)(1)-(5). In the instant case, plaintiff argues the medical opinions were not properly considered when the RFC was formulated. Plaintiff alleges the ALJ erred in granting limited weight to the opinions from Warren Rogers, M.D. and Elizabeth Printup. (Dkt. No. 13 at 7).

On January 31, 2018, Family Nurse Practitioner (FNP) Elizabeth Printup completed a medical examination form for the Department of Social Services and indicated plaintiff had moderate limitations in standing, sitting, lifting, carrying, pushing, puling, bending, climbing, maintaining attention, and maintaining pace. (Tr. 1073-74). Ms. Printup offered another opinion on April 30, 2018, assessing plaintiff could sit for ten minutes and stand for five at a time, sit and

stand for two hours each across a workday, she would need to be able to change positions at will and elevate her legs, and pain would frequently interfere with attention and concentration. (Tr. 1137-41). On May 21, 2018, treating physician Dr. Rogers opined plaintiff would have severe neck pain that would constantly interfere with attention and concentration, she could sit or stand for fifteen minutes at a time for a total of less than two hours each in a workday, and she needed to be able to change positions at will. (Tr. 1137-41).

ALJ Morgan afforded limited weight to these opinions. Dr. Rogers is a treating orthopedic surgeon and generally the opinion of a treating physician is entitled to controlling weight if it is well supported by medically acceptable clinical and diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When a treating physician's opinion is not given controlling weight, an ALJ considers the following factors to determine how much weight it should receive: (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether a specialist rendered the opinion in his or her area of expertise; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6). The Court finds the ALJ properly considered the requisite factors in considering Dr. Rogers' opinion.

The ALJ astutely identified the treating relationship and specialization of Dr. Rogers but highlighted the relatively recent treatment which was limited to a neck condition. (Tr. 42). The ALJ next noted the extreme limitations were inconsistent with the overall conservative treatment and lack of prescription pain medications. As previously discussed by the ALJ in his decision, plaintiff treated her pain with only ibuprofen. (Tr. 42).  Lastly, ALJ Morgan assessed the

7

significant limitations were inconsistent with treatment notes. (Tr. 43). The ALJ specifically identified Dr. Rogers' assessments in both February and March 2018 as failing to support the very restricted range of abilities. (Tr. 43). Indeed, those records indicate a normal gait, moderate tenderness to palpation on the left upper trap and cervical paraspinals, active range of motion of the cervical spine with decreased range of motion secondary to pain, normal balance, and normal sensory exam at both visits. (Tr. 1127, 1132). Where a treating physician's treatment notes did not corroborate the physician's restrictive limitations, and were contradicted by other medical evidence, the Second Circuit has held that an ALJ may properly decline to accord that treating provider's opinion significant weight. *Kennedy v. Astrue*, 343 F. App'x. 719, 721 (2d Cir. 2009). In sum, the ALJ provided good reasons for the weight accorded to the opinion of Dr. Rogers.

Pursuant to agency regulations, as properly recognized by the ALJ, Ms. Printup is not an acceptable medical source who can provide a medical opinion. *See* 20 C.F.R. §§ 404.1513(a) & (d), 416.913(a) & (d); SSR 06-03p; *see also Tindell v. Barnhart*, 444 F.3d 1002, 1005 (8th Cir. 2006) ("By definition then, the controlling weight afforded to a 'treating source' 'medical opinion' is reserved for the medical opinions of the claimant's own physician, psychologist, and other acceptable medical source."). Thus, the factors outlined in 20 C.F.R. sections 404.1527 and 416.927 for the weighing of medical opinions explicitly do not apply to an ALJ's evaluation of statements by a medical provider who is not an acceptable medical source. *See* 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d); SSR 06-03p; *Tindell*, 444 F.3d at 1005; *see also* SSR 96-5p (Medical source statements are medical opinions submitted by acceptable medical sources.). In determining what weight to give this other medical evidence, an ALJ has more discretion than when considering a medical opinion from a treating physician. *See* SSR 06-03p; *see also Raney*, 396 F.3d at 1010. An ALJ's decision should, however, reflect consideration of the information

from an other source so that a subsequent reviewer may follow the ALJ's reasoning. *See* SSR 06-03p ("Explanations of the Consideration Given to Opinions from 'Other Sources'"). The Court finds the ALJ's reasoning is clear and the opinion was properly evaluated.

ALJ Morgan combined much of the analysis for the opinions of Dr. Rogers and Ms. Printup. (Tr. 42-43). He correctly identified the lengthy treating relationship between plaintiff and Ms. Printup but again highlighted the lack of positive objective findings by Dr. Rodgers and Ms. Printup. (*Id.*). Earlier in the analysis, the ALJ reviewed various objective clinical findings that were mild from many sources, including frequently mild objective findings from Ms. Printup's exams. (Tr. 40, 43, 686, 689, 700, 707, 973, 977, 1036, 1040, 1044, 1108, 1112-13). The ALJ did not dismiss the opinion of Ms. Printup solely on her status as an unacceptable medical source but offered a thorough analysis of how he considered her opinion in light of the record as a whole.

Plaintiff has also argued the ALJ erred in granting the opinion from consultative examiner Dr. Cylus more weight than the opinions of Dr. Rogers and Ms. Printup. (Dkt. No. 11 at 19). It is well settled that State agency medical consultants are highly qualified specialists who are also experts in Social Security disability evaluation and their expert opinions evidence can be given weight if supported by medical evidence in the record. *See* 20 C.F.R. § 404.1527(e)(2)(i), 416.927(e)(2)(i); *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. Jun. 13, 2012). The ALJ noted he gave great weight to Dr. Cylus' opinions because, while Dr. Cylus did not personally examine or treat plaintiff, he was an impartial State agency medical consultant who had particularized knowledge and expertise with the disability program. (Tr. 41-42). Second, Dr. Cylus reviewed nearly the full record of evidence and had a longitudinal view of plaintiff's impairments, save the opinions from Dr. Rogers and Ms. Printup. (Tr. 42). ALJ Morgan also referenced Dr. Cylus' citations to the record with explanations of what evidence was persuasive or unpersuasive

in coming to his conclusions. (Tr. 42). Lastly, the ALJ referenced the objective examinations which only identified mild to moderate deficits but still elucidated which portions of the opinion were not included in the RFC. The ALJ clearly identified substantial evidence supporting his consideration of the opinion evidence from Dr. Rogers, Ms. Printup, and Dr. Cylus.

### B. Mental RFC

Plaintiff next argues the ALJ erred in formulating an RFC that did not include a limitation on the ability to interact with supervisors. (Dkt. No. 11 at 19). Plaintiff maintains that the ALJ erred because he gave great weight to the opinions of non-examining review physician Dr. Dipeolu and psychiatric consultative examiner Dr. Fabiano, both of whom opined moderate difficulties getting along with others, but excluded any interactions with supervisors in the RFC. (*Id*.).

Notably, the ALJ did not give controlling weight to either opinion and an ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.). Further, the ALJ has the ability and responsibility to weigh all of the available evidence to make an RFC finding that is consistent with the record as a whole.

To be sure, the basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. SSR 85-15, 1985 WL 56857 at *4 (S.S.A., 1985). In this case, the RFC limited plaintiff to occasional contact with the public and frequent contact with co-workers. The ALJ explained his rationale for the allotted mental RFC limitations but did not

expressly identify why he did not include a limitation in the ability to interact with supervisors. However, the Court is able to glean from the decision his rationale. In assessing moderate limitations in the functional domain of interacting with others, ALJ Morgan assessed that plaintiff reported to Dr. Fabiano she had anxiety and panic symptoms, particularly when she was in a crowd. (Tr. 36, 583). He found plaintiff's manner of relating and interpersonal skills as adequate. (Tr. 36, 43). Similarly, in her hearing testimony, she attributed her social difficulties to anxiety triggered by crowds. (Tr. 41, 58). She also divulged that she maintained friendships and relationships with her family. (Tr. 36, 585). During the regular course of treatment, she consistently presented as pleasant and cooperative with providers, with no specific interpersonal deficits noted. (Tr. 36, 41). Plaintiff never alleged any problems responding to authority or interacting with supervisors, nor does she identify any evidence of such limitations beyond the limitations from Dr. Dipeolu and Dr. Fabiano.

Furthermore, in this case, any error is harmless because the positions identified by the VE do not require significant social interaction. The Dictionary of Occupational Titles ("DOT") "provides a code, numbered 0-8, for the type of social interaction each occupation requires." *Habschied v. Berryhill*, 2019 WL 1366040, at *9 (W.D.N.Y. March 26, 2019) (citation omitted). The positions of addresser, table worker, and touch-up screener classifier each list the type of social interaction required as 8, which is described as attending to the work assignment instructions or orders of supervisor with no immediate response required unless clarification of instructions or orders is needed. (Tr. 45), *See* Dictionary of Occupational Titles, Appendix B, 1991 WL 688701 (1991). A position with a social interaction level of 8 indicates that the degree of relation to people required for that position is not significant. Dictionary of Occupational Titles, § 209.587-034, 1991 WL 671802.

### C. Appeals Council Action

Plaintiff submitted to the Appeals Council evidence that plaintiff ultimately underwent a cervical spine fusion in August 2018. (Tr. 11-29). These records post-dated the ALJ's July 5, 2018 opinion. The Appeals Council determined the records were not material to the relevant time periods (Tr. 2). Assuredly, evidence may not be deemed irrelevant solely because of timing. *See Hightower v. Colvin*, No. 12-CV-6475T, 2013 WL 3784155, at *3 (W.D.N.Y. July 18, 2013)(Additional evidence may relate to the relevant time period even if it concerns events after the ALJ's decision, provided the evidence pertains to the same condition previously complained of by the plaintiff.). However, as persuasively argued by defendant, new evidence is not material if it is evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Cassera v. Sec'y of HHS*, 104 F.3d 355 (2d Cir. 1996) (emphasis added); see *Castro v. Apfel*, 189 F.3d 460 (2d Cir.1999) (stating remedy for claimant whose condition deteriorated after the ALJ's decision is to reapply for benefits).

In his decision, ALJ Morgan acknowledged plaintiff's cervical spine disc disease was diagnosed just a few months prior the hearing, in February 2018. (Tr. 35, 39, 117-18). Medical records prior to the February 2018 appointment showed no objective findings related to the cervical spine. When evaluated by Dr. Rogers in February 2018, there were still only few abnormalities or objective findings. (Tr. 42-43, 1127-30, 1132-33). Plaintiff's reported pain levels increased, and her functioning decreased after the ALJ's decision. (Tr. 11, 14, 17). Moreover, the subsequent treatment and surgery records indicate the discectomy and spinal fusion surgery were extremely successful with normal alignment on a cervical MRI, reported reduction in pain of 75-80%, denied radiculopathy, and removal of lifting limitations. *See* 23, 26, 29. Plaintiff has failed to show the evidence submitted to the Appeals Council was relevant to the time period at issue and

further, the records do not undermine the ALJ's evaluation of plaintiff's condition during the relevant time period. A review of the record, including evidence submitted to the Appeals Council, indicates the ALJ's decision was proper and supported by substantial evidence.

**ACCORDINGLY, it is**

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is

    **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is

    **GRANTED**.

Dated: August 19, 2021                         *J. Gregory Wehrman*
Rochester, New York                  HON. J. Gregory Wehrman
                                                United States Magistrate Judge